UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:22-CV-00128-GNS-HBB

JASON DUVALL                                                                                              PLAINTIFF

v.

AMERICA'S HOME PLACE, INC.                                                                    DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Judgment on the Pleadings and to Compel Arbitration (DN 18). The motion is ripe for adjudication.

### I.     SUMMARY OF THE FACTS

Plaintiff Jason Duvall ("Duvall") contracted with Defendant America's Home Place, Inc. ("AHP") to build a home based on one of AHP's copyrighted designs (the "Agreement"). (Compl. ¶ 5, DN 1-2; Answer & Am. Countercl. 3, 5, DN 15; *see* Compl. Ex. A, DN 1-2 [hereinafter Agreement]). The Agreement had an arbitration clause (the "Arbitration Clause") requiring that any dispute under the Agreement be submitted to binding arbitration. (Compl. ¶¶ 6-7; Agreement ¶ 21). After construction began, Duvall could not fully repay his loan, so he asked AHP to stop building. (Answer & Am. Countercl. 5). Duvall then continued building the home without AHP or its authorization. (Answer & Am. Countercl. 5).

After an unsuccessful mediation, AHP sought to enforce the Arbitration Clause, but Duvall refused. (Compl. ¶¶ 8-10; *see* Compl. Ex. B, DN 1-2). Duvall instead filed a declaratory action in Warren (Kentucky) Circuit Court, alleging that the Arbitration Clause lacks language required

under Kentucky law and is therefore void and unenforceable. (Compl. ¶ 10). AHP removed the action to this Court, asserted a counterclaim to compel arbitration, and moves for judgment on the pleadings. (Notice Removal, DN 1; Answer & Am. Countercl.; Def.'s Mot. J. Pleadings & Compel Arbitration, DN 18).

## II. STANDARD OF REVIEW

Rule 12(c) allows motions for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial . . . ." Fed. R. Civ. P. 12(c). Rule 12(c) motions are analyzed under the same standard as Rule 12(b)(6) motions to dismiss for failure to state a claim. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citation omitted). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (citation omitted). Courts need not, however, "accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) (citation omitted). A Rule 12(c) motion "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Winget*, 510 F.3d at 582 (citing *Paskvan v. City of Cleveland Civ. Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).

To compel arbitration, "a federal court must [first] determine whether the parties have agreed to arbitrate the dispute at issue." *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (internal quotation marks omitted) (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)). If an agreement to arbitrate is not "in issue," then arbitration must be compelled. *Id.* If an agreement is "in issue," however, the action "must proceed to a trial to resolve the question." *Id.* (citing 9 U.S.C. § 4). Whether an agreement is "in issue" is evaluated under the summary

judgment standard under Fed. R. Civ. P. 56(c). *Id.*; *see Nu-X Ventures v. SBL, LLC*, 568 F. Supp. 3d 829, 833 (W.D. Ky. 2021). "[T]he party seeking to enforce an agreement has the burden of establishing its existence, but once prima facie evidence of the agreement has been presented, the burden shifts to the party seeking to avoid the agreement." *Schnuerle v. Insight Commc'ns., Co. L.P.*, 376 S.W.3d 561, 575 (Ky. 2012) (internal quotation marks omitted) (quoting *Louisville Peterbilt, Inc. v. Cox*, 132 S.W.3d 850, 857 (Ky. 2004)); *Davis v. Glob. Client Sols., LLC*, 765 F. Supp. 2d 937, 940 (W.D. Ky. 2011). Thereafter, "[t]he party who opposes arbitration must show a 'genuine issue of material fact as to the validity of the agreement to arbitrate' . . . [and] 'has an evidentiary burden of demonstrating that the arbitration agreement itself, rather than the contract in which it is found, is unenforceable.'" *Nu-X Ventures*, 568 F. Supp. 3d at 833 (internal citation omitted) (quoting *Atkins v. CGI Techs. & Sols., Inc.*, 339 F. Supp. 3d 619, 628 (E.D. Ky. 2018)).

### III. DISCUSSION

AHP contends that the parties agreed to the Arbitration Clause;[1] this dispute falls within the scope of the Arbitration Clause; the Arbitration Clause selects the Federal Arbitration Act ("FAA") as the governing law; and Duvall does not assert a cognizable claim to invalidate the Arbitration Clause under the FAA. (Def.'s Mem. Supp. Mot. J. Pleadings & Compel Arbitration 3-10, DN 18-1 [hereinafter Def.'s Mem.] (citations omitted)). AHP argues that the parties agreed to arbitrate all disputes arising from the Agreement, including those of voidability and enforceability. (Def.'s Mem. 10 (citing Answer & Countercl. Ex. 3, at 11-12, DN 2-3 [hereinafter Warranty])).

---

[1] Duvall does not contest the existence of or his assent to the Clause. (*See* Compl.; Pl.'s Resp. Def.'s Mot. J. Pleadings & Compel Arbitration, DN 20 [hereinafter Pl.'s Resp.]). Rather, Duvall contends that the Clause is unenforceable under Kentucky law. (*See* Compl. ¶¶ 5-10).

3

The Arbitration Clause states in relevant part:

> **21.    DISPUTE RESOLUTION AND AGREEMENT TO ARBITRATE** – OWNER AND CONTRACTOR AGREE TO WORK TOGETHER IN GOOD FAITH TO RESOLVE ALL CLAIMS, DISPUTES, DIFFERENCES AND/OR CONTROVERSIES ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE BREACH THEREOF.
>
> . . .
>
> IF ALL OTHER DISPUTE RESOLUTION EFFORTS FAIL, BOTH PARTIES AGREE TO WAIVE THEIR RIGHTS TO A JUDGE, JURY TRIAL OR CLASS ACTION LITIGATION AND SUBMIT ALL CLAIMS OR DISPUTES BETWEEN CONTRACTOR, OWNER, AND/OR 2-10 HOME BUYERS WARRANTY, ARISING FROM OR RELATING TO THE AGREEMENT, THE WARRANTY, THE REAL PROPERTY ON WHICH IT IS LOCATED, ANO/OR ANY COMMON ELEMENTS IN WHICH OWNER HAS AN INTEREST, INCLUDING WITHOUT LIMITATION, ANY CLAIM OF NEGLIGENT OR INTENTIONAL MISREPRESENTATION, TO BINDING ARBITRATION. BINDING ARBITRATION SHALL BE CONDUCTED . . . PURSUANT TO THE EXPRESS ARBITRATION AGREEMENT (THE "ARBITRATION AGREEMENT") AS SET FORTH IN THE 2-10 HOME BUYERS WARRANTY WHICH IS HEREBY INCORPORATED INTO THIS AGREEMENT BY REFERENCE.
>
> CONTRACTOR AND OWNER AGREE THAT THIS ARBITRATION AGREEMENT INVOLVES AND CONCERNS INTERSTATE COMMERCE AND IS GOVERNED BY THE PROVISIONS OF THE FEDERAL ARBITRATION ACT (9 U.S.C. §§ 1-16).

(Agreement ¶ 21).

Duvall opposes AHP's motion on three grounds: (1) lack of jurisdiction; (2) choice of law; and (3) the obligation to arbitration was not triggered by the language in the 2-10 Home Buyers Warranty (the "Warranty"). (Pl.'s Resp. 1-2; *see* Warranty 11-12).

### A.    Jurisdiction

AHP asserts that 28 U.S.C. § 1332(a)(1) confers this Court with subject-matter jurisdiction, but Duvall claims that "both parties were in Kentucky," which prevents diversity jurisdiction. (Notice Removal 1; Pl.'s Resp. 1). Courts must be cognizant of jurisdictional defects at all stages

of an action, as "[w]ithout jurisdiction the court cannot proceed at all in any cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (internal quotation marks omitted) (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1869)). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

Section 1332(a)(1) grants original jurisdiction to federal courts over actions between citizens of different states if the amount in controversy exceeds $75,000. The Complaint alleges that Duvall is a citizen of Kentucky and that AHP is incorporated in, and has its principal place of business in, Georgia. (Compl. ¶¶ 1, 4; *see* Answer & Countercl. 1 ¶ 1, 2 ¶ 4, DN 2 (admitting citizenship allegations)); *see also* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business . . . ."). Therefore, the action involves citizens of different states.

For actions seeking declaratory relief, the amount in controversy "is measured by the value of the object of the litigation." *Cleveland Hous. Renewal Project v. Deutsche Bank Tr. Co.*, 621 F.3d 554, 560 (6th Cir. 2010) (internal quotation marks omitted) (citation omitted); *accord* 13D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3569 (3d ed. Apr. 2022 update) ("In determining the amount in controversy of a suit to compel arbitration, the court looks to the amount at stake in the arbitration—that is, the award that might reasonably result from an arbitration." (footnote omitted)). Accordingly, the Court looks to AHP's arbitration demand, which alleges breach of contract, unjust enrichment, and copyright infringement and seeks damages. (Compl. 3; Answer & Countercl. Ex. 5, at 2, DN 2-5).[2] AHP submits a declaration from

---

[2] When considering a motion for judgment on the pleadings, courts may consider exhibits outside the pleadings if they are referenced in the complaint and central to its claims; matters of public record; items appearing in the record; or attached to the pleadings. *United Food & Com. Workers,*

5

David Sparks, AHP's Division President, stating that "AHP seeks . . . up to $150,000 in statutory damages for copyright infringement under 17 U.S.C. § 505." (Sparks Decl. ¶ 11, DN 2-1).[3] Therefore, AHP has met its burden of demonstrating that the amount in controversy exceeds $75,000, so this Court properly maintains subject-matter jurisdiction over the action pursuant to 28 U.S.C. § 1332(a)(1). *See Cleveland Hous. Renewal Project*, 621 F.3d at 560 (citation omitted).

**B.     Choice of Law**

Duvall disputes that the FAA applies to this action and argues that Kentucky law applies. (Pl.'s Resp. 1-2). The FAA, 9 U.S.C. §§ 1-16, applies to arbitration clauses in "contract[s] evidencing a transaction involving commerce" and are "valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2; *see also Stout*, 228 F.3d at 714. The FAA codifies a liberal federal policy favoring arbitration agreements and creates a presumption of arbitrability. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Schnuerle*, 376 S.W.3d at 574 ("[I]t has long been the public policy of Kentucky that arbitration is a favored method of dispute resolution.").

When determining the proper law governing arbitration clauses, courts "start[] with a presumption that an arbitration agreement is governed by the contract law of the state whose laws otherwise apply to it." *Atricure, Inc. v. Meng*, 12 F.4th 516, 522 (6th Cir. 2021) (citation omitted). Even then, as the Sixth Circuit explained:

> Although the FAA generally preempts inconsistent state laws and governs all aspects of arbitrations concerning "transaction[s] involving commerce," parties

---

*Loc. 1995 v. Kroger Co.*, 51 F.4th 197, 202 (6th Cir. 2022); *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008). AHP's arbitration demand is referenced in the Complaint and AHP's Counterclaim and was attached to the latter. (Compl. ¶¶ 9-10; Notice Removal ¶ 6; Answer & Countercl. 5-6; *see* Compl. Ex. B). Thus, it may be considered.

[3] The declaration was referenced in and attached to AHP's Counterclaim, so it may be also properly considered. (Sparks Decl., DN 1-2; Answer & Countercl. 2); *see United Food & Com. Workers, Loc. 1995*, 51 F.4th at 202; *Barany-Snyder*, 539 F.3d at 332.

may agree to abide by state rules of arbitration, and "enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA." The central inquiry in this choice-of-law determination is whether the parties unambiguously intended to displace the FAA with state rules of arbitration.

*Savers Prop. & Cas. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 748 F.3d 708, 715-16 (6th Cir. 2014) (alteration in original) (internal citations omitted) (citation omitted). The Sixth Circuit's analysis looks to which law the parties agreed to and whether the clause "refers to the FAA []or otherwise suggests that the parties sought to invoke its provisions." *Id.* at 716.

In this action, the Arbitration Clause explicitly provides "THAT THIS ARBITRATION AGREEMENT INVOLVES AND CONCERNS INTERSTATE COMMERCE AND IS GOVERNED BY THE PROVISIONS OF THE FEDERAL ARBITRATION ACT (9 U.S.C. §§ 1-16)." (Agreement ¶ 21). Duvall argues Kentucky substantive law regarding the validity of the Arbitration Clause, as discussed below, but does not present any other argument that Kentucky law applies. Therefore, the express terms of the Agreement demonstrate the parties' intent for the FAA to govern.

C. **Warranty Arbitration Clause**

AHP posits that Duvall does not challenge that the separate arbitration clause in the Warranty was incorporated by reference into the Arbitration Clause and that the Warranty dictates that all disputes should be submitted to arbitration, including issues of voidability, revocability, and enforceability. (Def.'s Mem. 10-11; *see* Warranty 11-12). Duvall asserts that AHP cannot compel arbitration based upon the language of the Warranty, which "was never triggered because the home at issue was never built by [AHP]." (Pl.'s Resp. 2).

Challenges to the formation of an enforceable obligation to arbitrate are decided by the Court. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006) (citation omitted); *cf. Equitania Ins. Co. v. Slone & Garrett, P.S.C.*, 191 S.W.3d 552, 556 (Ky. 2006) ("[T]he

7

interpretation of contracts is an issue of law for the court to decide." (citation omitted)). "[I]n the absence of ambiguity a written instrument will be enforced strictly according to its terms . . . ." *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky. 2003) (citation omitted); *accord Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) ("Under the [FAA], arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." (citation omitted)). It has "long been settled that parties can incorporate outside documents into a contract if their agreement says as much." *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 845 (6th Cir. 2020). "For a contract validly to incorporate other terms, 'it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms.'" *Dixon v. Daymar Colls. Grp., LLC*, 483 S.W.3d 332, 344 (Ky. 2015) (citation omitted). There must also be "clear language [] express[ing] the incorporation of other terms and conditions[.]" *Id.* (alterations in original) (quoting *Bartelt Aviation, Inc. v. Dry Lake Coal Co.*, 682 S.W.2d 796, 797 (Ky. App. 1985)). When the terms to be incorporated are clearly described "and the signature follows afterward, 'it is a logical inference that the signer agrees to be bound by everything incorporated.'" *Id.* (quoting *Bartelt Aviation*, 682 S.W.2d at 797); *accord Hathaway v. Eckerle*, 336 S.W.3d 89-90 (Ky. 2011) ("[I]t is the settled law in Kentucky that one who signs a contract is presumed to know its contents, and that if he has an opportunity to read the contract which he signs he is bound by its provisions . . . ." (citation omitted)).

The Arbitration Clause in this instance provides that arbitration be conducted "PURSUANT TO THE EXPRESS ARBITRATION AGREEMENT . . . AS SET FORTH IN THE 2-10 HOME BUYERS WARRANTY WHICH IS HEREBY INCORPORATED INTO THIS AGREEMENT BY REFERENCE." (Agreement ¶ 21). Moreover, the Arbitration Clause states that the parties agree to "SUBMIT ALL CLAIMS OR DISPUTES BETWEEN [AHP],

[DUVALL], AND/OR 2-10 HOME BUYERS WARRANTY, ARISING FROM OR RELATING TO THE AGREEMENT, . . . TO BINDING ARBITRATION." (Agreement ¶ 21). Duvall's signature is below the Arbitration Clause. (*See* Agreement 6). Duvall also signed an acknowledgement that he received a copy of the Warranty, as an addendum to the Agreement, and that he had the opportunity to read the Warranty's terms before signing. (*See* Warranty; Agreement 12).[4] Considering Duvall signed below both provisions and he does not otherwise dispute his signature, this demonstrates Duvall assented to the Arbitration Clause and the incorporated arbitration provision from the Warranty. *See Dixon*, 483 S.W.3d at 344; *Hathaway*, 336 S.W.3d at 89-90.

> The arbitration clause within the Warranty provides:
>
> [Duvall], [AHP], the warranty insurer and [2-10 Home Buyers Warranty Corporation] (each an "Arbitration Party" and collectively the "Arbitration Parties") each hereby agree that every claim, complaint, controversy or dispute among two or more Arbitration Parties that arises out of, relates to or otherwise concerns this [warranty] or the home (a "Dispute") shall exclusively be resolved by binding arbitration and not by a judge or jury.
>
> . . . The Arbitration Parties each agree that the provisions of this Section VI.G involves and concerns interstate commerce and that the interpretation of this Section VI.G shall be governed by the Federal Arbitration Act (9 U.S.C. § 1, et seq.), to the exclusion of any different or inconsistent federal, state or local law, ordinance or judicial rule. The arbitration provision in this Section VI.G is self-executing. Any disputes concerning the interpretation or enforceability of this Section VI.G, including without limitation, its revocability or voidability for any cause, the scope of arbitral issues and any defense based upon waiver, estoppel or laches shall be decided solely by the arbitrator.

---

[4] The Warranty was referenced in, central to, and attached to AHP's Counterclaim, and its terms were incorporated into the Arbitration Clause (which is central to and referenced in the Complaint), so the Warranty may be considered. (Answer & Countercl. 4, 6; Contract ¶ 21; Compl. ¶¶ 5-10); *see United Food & Com. Workers, Loc. 1995*, 51 F.4th at 202; *Barany-Snyder*, 539 F.3d at 332.

(Warranty 11-12 (italics omitted)). Given this language, Duvall's action falls within the scope of the Warranty's arbitration language, in addition to the Arbitration Clause. Therefore, the Arbitration Clause and the Warranty require arbitration of this action.

### D. Duvall's State Law Arguments

Under the FAA, "[c]ourts may not . . . invalidate arbitration agreements under state laws applicable *only* to arbitration provisions," though "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Dr.'s Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) (citations omitted). Duvall does not present generally applicable contract defenses and instead relies on a Kentucky-specific argument under the Kentucky Uniform Arbitration Act, KRS Chapter 417. (*See* Compl. ¶¶ 10-12; Pl.'s Resp. 1-2). Therefore, Duvall's claims are unavailing under the FAA.

Even if the Court were to proceed to the merits of Duvall's claims, the arguments are equally without merit. Duvall cites *Ally Cat, LLC v. Chauvin*, 274 S.W.3d 451 (Ky. 2009), for the proposition that the Arbitration Clause is unenforceable under Kentucky law. (Pl.'s Resp. 1-2; *see* Compl. ¶¶ 11-12). In *Ally Cat*, the Kentucky Supreme Court concluded that KRS 417.200 requires an arbitration clause to "include language stating that the arbitration is to be held in Kentucky before a Kentucky court can enforce an arbitrator's award" and that the absence of such language renders the clause unenforceable because state courts are deprived of subject-matter jurisdiction to compel arbitration under the Kentucky United Arbitration Act. *Ally Cat*, 274 S.W.3d at 454-56; *see Padgett v. Steinbrecher*, 355 S.W.3d 457, 462 (Ky. App. 2011) ("*Ally Cat* requires not a choice of law provision, however, but a forum-selection or venue clause designating the particular state in which the arbitration must proceed." (citation omitted)). *Ally Cat* is distinguishable from this action, however, as the clause in that case provided for arbitration under the Kentucky Uniform

Arbitration Act, and the court's holding was premised entirely on Kentucky law. *See Ally Cat*, 274 S.W.3d at 453-56.

*Hathaway v. Eckerle* is better aligned with the facts in this action where the parties' arbitration clause specified the FAA as the governing law. *Hathaway*, 336 S.W.3d at 87. The Kentucky Supreme Court held that *Ally Cat* was inapplicable under those circumstances and refused to consider the Kentucky Uniform Arbitration Act. *Id*. at 87-88 (quoting *Ernst & Young, LLP v. Clark*, 323 S.W.3d 682, 687 (Ky. 2010)); *cf. id.* at 87 ("[S]ince choice of law provisions are generally valid in arbitration clauses, the Federal Arbitration Act governs the arbitration clause in this matter." (citing *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky. App. 2001))); *see also Indus. Servs. of Am., Inc. v. Abcom Trading Pte. Ltd.*, 869 F. Supp. 2d 807, 812 (W.D. Ky. 2012) ("Likewise, the failure of the arbitration clause to specify a forum and procedures for arbitration . . . does not render the agreement unenforceable [under the FAA]. An agreement to arbitrate need not spell out the exact terms of arbitration to be enforceable.").

In sum, AHP has established the parties' agreement to arbitrate this dispute under the provisions of their Agreement. *See Schnuerle*, 376 S.W.3d at 575; *Davis*, 765 F. Supp. 2d at 940; *Great Earth Cos.*, 288 F.3d at 889. Moreover, Duvall has not identified any material fact regarding the enforceability of the Arbitration Clause. *See Nu-X Ventures*, 568 F. Supp. 3d at 833. As such, arbitration must be compelled, and AHP's motion will be granted. *See Great Earth Cos.*, 288 F.3d at 889; *Winget*, 510 F.3d at 582 (citation omitted).

### IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion for Judgment on the Pleadings and to Compel Arbitration (DN 18) is **GRANTED**, and the parties to

this action are **COMPELLED** to arbitrate all claims.  The Complaint is **DISMISSED WITHOUT PREJUDICE**.  The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge
United States District Court

June 5, 2023

cc: counsel of record